ON REHEARING
'SUMMERS, Justice.
This is an appeal from a conviction for 'violating Ordinance No. 100 of Claiborne Parish prohibiting, inter alia, the selling of beer of an alcoholic content greater than one-half of one percent by volume within Ward Three. The validity of the ordinance was assailed by a motion to quash and a motion in arrest of judgment, both of which were denied. Bills of exceptions were reserved.
The question is whether the ordinance denies the accused equal protection of the laws contrary to the guarantees of Article I, Section 2, of the Louisiana Constitution and the Fifth and Fourteenth Amendments to the United States Constitution.
When the Eighteenth Amendment to the United States Constitution was adopted prohibiting the use of intoxicating liquors throughout the Nation, all State laws on the subject were, for all practical purposes, nullified, the Federal Constitution having pre-empted the field. In 1933 the Twenty-First Amendment repealed the Eighteenth Amendment and reinvested authority in the States to regulate intoxicating liquors. Whereupon, Louisiana enacted laws regulating alcoholic beverages. Act 17 of 1935 was part of this legislation. It is a local option law, granting to parishes, wards, or municipalities the right, by an election held for the purpose, to determine that the business of selling alcoholic or intoxicating liquors shall not be licensed or permitted within its territory.
Pursuant to this legislative authority, an election was held in Claiborne Parish. The election carried the proposition that beverages containing more than one-half of one percent alcohol should be outlawed. Therefore, on January 6, 1943, Ordinance No. 100, a “dry law”, was adopted declaring, in pertinent part, it to be unlawful for any person to sell beer of an alcoholic content containing more than one-half of one percentum by volume.
Subsequently, Act 372 of 1948 was enacted providing that local ordinances could not thereafter prohibit the sale of beverag'es containing more than one-half of one percent alcohol by volume, but not *894 more than 3.2 percent alcohol by weight. This Act, however, contained a savings clause which read:
Nothing in this Act shall be construed or have the effect of vitiating or affecting any ordinance or statute previously adopted or enacted by any political sub-division declaring illegal or forbidding the manufacturing, producing, rectifying, blending, using, storing, distributing and selling of beverages containing alcohol of more than one-half of one per cent.
The substance of the 1948 Act, without the quoted savings clause, was thereafter incorporated into the Revised Statutes of 1950 as Sections 581 through 596 of Title 26. Section 588 provides:
Prohibition of the sale of any or all alcoholic beverages by a local option election held pursuant to this Chapter shall not operate as a prohibition of the manufacturing, producing, using, distributing, storing, or selling of beverages containing more than one-half of one per cent alcohol by volume but not mQre than three and two-tenths per cent alcohol by weight.
In a number of cases in this Court and in our courts of appeal it has been held that the enactment of Sections 581 through 596 into the Revised Statutes, without incorporating the savings clause of Act 372 of 1948, did not have the effect of vitiating dry ordinances adopted under the authority of the 1935 Act. State v. Dunning, 224 La. 204, 69 So.2d 16 (1953); State v. Wilson, 221 La. 990, 60 So.2d 897 (1952); State v. Bradford, 220 La. 176, 56 So.2d 145 (1951); 112 Grocery v. Cappel, 228 So.2d 157 (La.App.1969) cert. denied, 255 La. 246, 230 So.2d 94; Melton v. Winn Parish Police Jury, 228 So.2d 58 (La.App.1969) cert. denied, 255 La. 153, 229 So.2d 734. These-holdings are supported by Section 16 of Title 1 of the Revised Statutes. That section enacts a rule of construction declaring' that the Revised Statutes “shall be construed as continuations of and as substitutes for the laws or parts of laws which are revised or consolidated herein.” The-section mandates that the adoption of the Revised Statutes shall not affect, among other, any rights acquired prior to the effective date.
Notwithstanding that since the 1948 Act- and its inclusion in Section 588 the cases have upheld the validity of local option ordinances previously enacted under authority of the 1935 Act, it is contended that the constitutionality of those ordinances has never been tested against the claim that they violate the Equal Protection Clause of the State and Federal Constitutions. The equal protection argument is founded upon the rationale that it is an unequal application of laws to permit some parishes, wards or municipalities to adhere to local option dry laws when the *896 State’s policy enunciated in Section 588 is that beverages containing less than 3.2 percent alcohol cannot be outlawed. For one thing, it is said, those living' within the geographical area affected by the ordinances may not engage in the business of selling intoxicating liquors, an avocation permitted elsewhere in the State.
For this contention to be sustained two propositions must be established: First, a finding must be made that the State’s policy is expressed in Section 588 and, therefore, it is a contravention of State policy for ordinances to outlaw beverages of less than 3.2 percent alcohol. And, secondly, it must be shown that the dry laws result in' an unreasonable classification which works 'a denial of equal protection of the laws.: '
First, it may be true that the State’s policy is expressed in Section 588 to the effect that beverages of less than 3.2 percent alcohol may not be outlawed. But this is only part of the State’s policy. At the same time Act 372 of 1948 (the predecessor of Section 588) was enacted declaring that beverages of less than 3.2 percent alcohol could not be prohibited, it was emphatically stated in the savings clause of that same act that it did not have the effect of vitiating or affecting any ordinance or statute previously adopted declaring illegal the selling of beverages of more than one-half of one percent. That is to say, the savings clause created an exception to the general policy expressed in the Act of 1948, and this exception was as much a part of the State’s public policy as any other part of the act. And when the 1948 Act was continued in the Revised Statutes as Section 588, the exception remained valid under repeated decisions of this Court. The exception remains valid today as a viable expression of the State’s public policy, standing with equal dignity alongside the State’s policy of not permitting dry laws after 1948.
As to the contention that permitting isolated areas to maintain dry laws results in a denial of equal protection,' the answer is that laws are not rendered violative of equal protection guarantees because they operate only in certain -geographical areas. We answered this' question in State v. Guidry, 247 La. 631, 173 So.2d 192 (1965), by saying:
The equal protection clause relates to equality between persons as such, rather than between areas. Clearly, the guarantee of equal protection is not a demand that all state laws operate from boundary to boundary. It compels ho state to adopt an iron rule of territorial uniformity for legislation. In the enactment of laws, the Legislature may consider the “needs and desires” of the various sections of the state without infringing equal protection.
There is a rational basis for the exception to Section 588. It is found in the legis *898 lative recognition of the differing desires and needs of the people. These desires and needs were encouraged and authorized by the enactment of the local option statute of 1935. The desires and needs were manifested by those areas where local option ordinances ■ were voted upon by the people. In areas where local option was not exercised, the need was not manifest. The authority for future local ordinances prohibiting beverages containing less than 3.2 percent alcohol was withdrawn by the 1948 Act and its successor, Section 588. The local option ordinances previously adopted have been excepted from the Section 588 restraint. The exception is further recognition of the local needs and desires of a geographical area which the public policy of the State sanctions.
There is no constitutional requirement that the rich diversity of customs and mores of our people must be abolished. And it does not offend constitutional equal protection rights to permit ordinances which preserve those customs and mores. Without evidence that these ordinances are based upon an unreasonable classification, there is no basis for invalidating them. McGowan v. Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961); Fort Smith Light & Traction Co. v. Paving Dist, 274 U.S. 387, 47 S.Ct. 595, 71 L.Ed. 1112 (1927).
It would be inconsistent with sound principles of law to declare these ordinances unreasonable and based upon an invidious classification simply because they were enacted almost thirty years ago before the majority of the presently affected population were able to express themselves at the polls. Those who live in Claiborne Parish today have the power, by ordinary legislative process, to abolish Ordinance No. 100 if they find it incompatible with their life style today. We will leave the question to them.
For the reasons assigned, the judgment and decree heretofore rendered is reversed and set aside, and the judgment of the trial court reinstated. The conviction and sentence are affirmed.
DIXON, J., dissents.